******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.*
MATTHEW L. ABRAHAM
(AC 35706)

Keller, Prescott and Sullivan, Js.

*Argued May 27—officially released September 9, 2014*

(Appeal from Superior Court, judicial district of New Haven, Licari, J. [judgment]; Fasano, J. [motion to correct illegal sentence].)

*Matthew L. Abraham*, self-represented, the appellant (defendant).

*Toni M. Smith-Rosario*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Kevin C. Doyle*, senior assistant state's attorney, for the appellee (state).

*Opinion*

KELLER, J. The defendant, Matthew L. Abraham, appeals from the judgment of the trial court dismissing his motion to correct an illegal sentence. On appeal, the defendant argues that the court improperly dismissed his motion for lack of subject matter jurisdiction. We agree with the defendant's jurisdictional argument and reverse the judgment of the trial court and remand the case for a new hearing on the defendant's motion.

The following facts and procedural history are relevant to this appeal. In *State* v. *Abraham*, 84 Conn. App. 551, 854 A.2d 89, cert. denied, 271 Conn. 938, 861 A.2d 514 (2004), this court set forth the facts that the jury reasonably could have found from the evidence presented at the defendant's criminal trial: "On March 28, 2001, Marquis Bailey and several of his friends assaulted the victim, Marcelino Rivera. Bailey took the victim's [cell phone]. The victim attempted to retrieve the [cell phone] from Bailey by telling him that 'he just wanted to end it.' Bailey taunted the victim by using the [cell phone] in front of him and attempted to leave in a taxi. The victim opened the door of the taxi and kicked Bailey in the face. A scuffle ensued. The taxi driver interceded and separated the two men. When the taxi drove away, Bailey still possessed the victim's [cell phone].

"The following day, the victim and some of his friends drove to the area of Chapel Park in New Haven. The victim called Bailey, asking him to return his [cell phone]. Bailey responded that the victim had to 'give him some money' to get his [cell phone]. The victim told Bailey that he was 'gonna get savaged if [he did not] give the phone back,' or, in other words, he was going to 'beat up' Bailey. The victim's friend, Luis Segarra, told Bailey to 'come to the park' and 'give up the phone.' . . . Bailey, the defendant and three other men went to the park. Before arriving at the park, they stopped at a residence . . . where the defendant, who was aware of the previous physical altercations between the victim and Bailey, retrieved a gun from the garage. At the park, the victim asked Bailey for his [cell phone], but Bailey responded that he would have to pay for its return. A scuffle ensued between Bailey and Segarra. The victim intervened with a metal baseball bat, which he had hidden against the rear bumper of Segarra's car. The victim swung the bat at Bailey, hitting him on either the upper portion of his body or his head. The defendant pulled out the gun and fired one shot at the victim. The victim dropped the bat and began to run. The defendant fired a second shot which struck the victim and severed an artery in his lung. The victim bled to death at the scene." Id., 552–53.

In the first part of the information, the defendant was

charged with murder in violation of General Statutes § 53a-54a and criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c. He also was notified in the second part of the information, part B, that the state intended to seek an enhancement of his sentence, pursuant to General Statutes § 53-202k,[1] if he were to be convicted of the commission of a class A, B or C felony with a firearm. On August 5, 2002, following a jury trial, the defendant was convicted of the lesser included offense of manslaughter in the first degree with a firearm, in violation of General Statutes § 53a-55a (a),[2] a class B felony, and criminal possession of a pistol or revolver.

After the jury found the defendant guilty of these charges, the defendant's trial counsel, Attorney Thomas Conroy, advised the criminal trial court that he "would stipulate that the elements of the part B [information] have been proven. There's no point in submitting them to a jury . . . just as a matter of law." The court, *Licari, J.*, then addressed the defendant's counsel: "I think that we . . . spoke about this before, and my understanding, at this point, based on those verdicts, that you are in agreement, Mr. Conroy, that without any further inquiries of the jury as required by [*State* v. *Velasco*, 253 Conn. 210, 751 A.2d 800 (2000)],[3] that the conviction of manslaughter in the first degree—intentional manslaughter with a firearm satisfies all the elements of the part B information as a matter of law, and therefore that no further inquiry of the jury is correct; am I correct in that statement, sir?" (Footnote added.) Defense counsel responded, "Yes, Your Honor," and the court then stated, "All right. And therefore, the court will make a finding of guilty under the part B [information] as well."

The court sentenced the defendant to a total effective term of forty years of incarceration, suspended after thirty years, with five years of probation. The defendant's sentence included a consecutive five year enhancement, pursuant to § 53-202k, that was based on his conviction of manslaughter in the first degree with a firearm. This court affirmed the judgment of conviction on appeal; *State* v. *Abraham*, supra, 84 Conn. App. 552; and our Supreme Court denied the defendant's petition for certification to appeal. *State* v. *Abraham*, 271 Conn. 938, 861 A.2d 514 (2004). The defendant also filed a petition for a writ of habeas corpus, alleging ineffective assistance of counsel, which was denied by the habeas court and dismissed by this court on appeal. See *Abraham* v. *Commissioner of Correction*, 118 Conn. App. 901, 982 A.2d 657 (2009), cert. denied, 294 Conn. 925, 985 A.2d 1061 (2010). The defendant raised no issue regarding his sentence enhancement under § 53-202k in either his direct appeal or his habeas petition.

On December 2, 2011, the defendant, pursuant to Practice Book § 43-22, filed a "Motion to Correct an

Illegal Sentence or Other Illegal Disposition," raising two grounds. First, he claimed that the imposition of the sentence enhancement under § 53-202k was illegal because the jury was never asked to find the statutory elements justifying an enhancement prior to the court's applying the enhancement to his sentence. Second, the defendant argued that he had been sentenced illegally to twice the number of years permitted under § 53-202k.

On May 9, 2012, the trial court, *Fasano, J.*, held a hearing on the defendant's motion. The court noted that a public defender had conducted a review of the defendant's motion under *State* v. *Casiano*, 282 Conn. 614, 627–28, 922 A.2d 1065 (2007), and concluded that the motion had no merit. Consequently, the court permitted the withdrawal of a special assistant public defender, Joseph E. Lopez, who had filed an appearance for the defendant for the limited purpose of conducting the *Casiano* review. The defendant then proceeded to represent himself.[4]

On May 10, 2012,[5] the court filed a written memorandum of decision. The court first indicated that, at the hearing, the defendant had expressly withdrawn the second claim in his motion, which was that the length of his sentence enhancement exceeded that permitted under § 53-202k. With regard to the defendant's first claim, which was that he was entitled to a jury finding on the part B information before his sentence could be enhanced under § 53-202k, the court decided that it lacked jurisdiction over what it concluded was "a claim of alleged trial error involving the failure of the jury to find facts in connection with the enhancement statute" and dismissed the defendant's motion.[6] This appeal followed.

I

First, we address the claim raised by the defendant on appeal that the court erroneously dismissed the motion to correct an illegal sentence for lack of subject matter jurisdiction. The issue of whether a defendant's claim may be brought by way of a motion to correct an illegal sentence, pursuant to Practice Book § 43-22, involves a determination of the trial court's subject matter jurisdiction and, as such, presents a question of law over which our review is plenary. See *State* v. *Koslik*, 116 Conn. App. 693, 697, 977 A.2d 275, cert. denied, 293 Conn. 930, 980 A.2d 916 (2009).

"Jurisdiction involves the power in a court to hear and determine the cause of action presented to it and its source is the constitutional and statutory provisions by which it is created. . . . Article fifth, § 1 of the Connecticut constitution proclaims that [t]he powers and jurisdiction of the courts shall be defined by law, and General Statutes § 51-164s provides that [t]he superior court shall be the sole court of original jurisdiction for all causes of actions, except such actions over which

the courts of probate have original jurisdiction, as provided by statute. . . . The Superior Court is a constitutional court of general jurisdiction. . . . In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law." (Citations omitted; internal quotation marks omitted.) *State* v. *Lawrence*, 281 Conn. 147, 153, 913 A.2d 428 (2007).

Practice Book § 43-22, which establishes the procedure for correcting an illegal sentence, provides that "[t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

"Practice Book rules do not ordinarily define subject matter jurisdiction. General Statutes § 51-14 (a) authorizes the judges of the Superior Court to promulgate rules regulating pleading, practice and procedure in judicial proceedings  .  .  .  .  Such rules shall not abridge, enlarge or modify any substantive right nor the jurisdiction of any of the courts. . . . Because the judiciary cannot confer jurisdiction on itself through its own rule-making power, § 43-22 is limited by the common-law rule that a trial court may not modify a sentence if the sentence was valid and its execution has begun. . . . Therefore, for the trial court to have jurisdiction to consider the defendant's claim of an illegal sentence, the claim must fall into one of the categories of claims that, under the common law, the court has jurisdiction to review." (Citations omitted; internal quotation marks omitted.) *State* v. *Lawrence*, supra, 281 Conn. 155. Practice Book § 43-22 has been held to be "consistent with the broader common-law meaning of illegality, permitting correction of both illegal sentences and sentences imposed in an illegal manner." *State* v. *Parker*, 295 Conn. 825, 837, 992 A.2d 1103 (2010); *State* v. *Smith*, 150 Conn. App. 623, 635, 92 A.3d 975 (2014). "[I]n determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *State* v. *Smith*, supra, 634.

The categories previously recognized under the common law were summarized by this court in *State* v. *McNellis*, 15 Conn. App. 416, 443–44, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988). We explained that "[a]n illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is inherently contradictory." (Internal quotation marks omitted.) Id. "Accordingly, if a defendant's claim falls within one of these four categories the trial court has jurisdiction to modify a sentence after it has *commenced*." (Emphasis added.) *State* v. *Koslik*, supra, 116 Conn. App. 698–99. "In order for the court to have jurisdiction over a motion to cor-

rect an illegal sentence after the sentence has been *executed*, the sentencing proceeding, and not the trial leading to the conviction, must be the subject of the attack." (Emphasis added.) *State* v. *Lawrence*, supra, 281 Conn. 158.[7]

The need to draw a distinction between what occurs during the sentencing proceeding and what occurs during the trial leading to the conviction, in determining the court's jurisdiction over a motion to correct an illegal sentence, was discussed by this court in *State* v. *Henderson*, 130 Conn. App. 435, 24 A.3d 35 (2011), appeals dismissed, 308 Conn. 702, 66 A.3d 847 (2013) (certification improvidently granted). Despite the fact that jury instructions are delivered during the trial, and not in the context of sentencing, in that case, this court held that a trial court has jurisdiction to consider a defendant's claim that a sentence enhancement was imposed in an illegal manner because the jury was not instructed to make one of the requisite findings under another enhancement statute, the persistent felony offender law, General Statutes § 53a-40. Id., 446. Citing *State* v. *Parker*, supra, 295 Conn. 839–40, and *State* v. *Pierce*, 129 Conn. App. 516, 522, 21 A.3d 877, cert. denied, 302 Conn. 915, 27 A.3d 368 (2011), this court in *Henderson* indicated that the enumerated categories of illegal sentences subject to consideration under Practice Book § 43-22 "would not encompass rights or procedures subsequently recognized as mandated by federal due process. . . . Therefore, the examples cited in *McNellis* are not exhaustive and the parameters of an invalid sentence will evolve." (Internal quotation marks omitted.) *State* v. *Henderson*, supra, 441. The defendant in *Henderson* challenged the imposition of an illegal sentence, claiming that "he could not be sentenced to a term of imprisonment authorized by the next more serious degree of felony [under § 53a-40] unless the jury, and not the sentencing court, made the required statutory findings. He maintain[ed] that because this did not occur, his sentence exceeded the permissible statutory maximum and therefore was illegal." Id., 446. We agreed with the defendant that "such a claim falls within the trial court's jurisdiction and properly was raised by a motion pursuant to Practice Book § 43-22." Id. In reaching this conclusion, we determined that a challenge to a court's finding, rather than to a jury's finding, of a fact that increased the prescribed range of penalties to which the defendant was exposed, in light of *Apprendi* v. *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *State* v. *Bell*, 283 Conn. 748, 931 A.2d 198 (2007), was appropriately the subject of a motion to correct an illegal sentence.[8] Id.

"In *Apprendi*, the United States Supreme Court presented the issue as 'whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be

made by a jury on the basis of proof beyond a reasonable doubt.' . . . The court held that [o]ther than the fact of a prior conviction,[9] any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. . . . [I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. . . .

"In *State* v. *Bell*, supra, 283 Conn. 784–85, our Supreme Court was presented with the question of whether a trial court's decision to enhance a sentence as a persistent dangerous felony offender . . . under § 53a-40 (h) violated the precepts of *Apprendi* . . . and its progeny. The court concluded that a determination by the trial court, rather than the jury, that an extended period of incarceration would best serve the public interest violated the defendant's constitutional rights under *Apprendi*, and, therefore, a new sentencing proceeding was needed." (Citations omitted; footnote added; internal quotation marks omitted.) *State* v. *Henderson*, supra, 130 Conn. App. 441–42. In *Bell*, our Supreme Court also stated: "[I]n those cases in which the defendant chooses to waive his right to a jury trial under § 53a-40, the court may continue to make the requisite finding. Additionally, the court properly may impose an enhanced sentence if the defendant admits to the fact that extended incarceration is in the public interest." *State* v. *Bell*, supra, 812.

This court recently reviewed a defendant's claim that the trial court improperly denied his motion to correct an illegal sentence. The defendant argued, in part, that he was entitled to a new trial and to a new jury determination as to the applicability of § 53-202k. The trial court exercised jurisdiction and denied the motion, and its decision was affirmed on the merits. See *State* v. *Vivo*, 147 Conn. App. 414, 417–18, 81 A.3d 1241 (2013). Although *Vivo* does not cite *Henderson*, we raised no concerns in *Vivo* regarding the trial court's jurisdiction to decide the defendant's challenge to the imposition of a sentence enhancement under § 53-202k.

Also, recently, in *State* v. *Kokkinakos*, 143 Conn. App. 76, 66 A.3d 936 (2013), overruled in part on other grounds by *State* v. *Henderson*, 312 Conn. 585, 599 n.13, A.3d (2014), this court exercised jurisdiction and considered, on appeal, the merits of a defendant's motion to correct an illegal sentence on the ground that a finding as to a requisite element of § 53a-40— the enhancement statute in effect at the time that he committed the underlying offenses—that the extended incarceration of the defendant best served the public interest, was never made by either the court or the jury, and thus the enhancement of his sentence was illegal. Id., 81–82. The trial court had considered and denied the motion on its merits. Id., 79. On appeal, the state

argued that the defendant, by pleading guilty to a part B information, implicitly acknowledged every relevant element of § 53a-40, including the fact that an enhanced sentence best served the public interest.[10] Id., 82. We noted, "The state essentially argues that by virtue of the defendant's guilty plea on the part B information, he admitted to a finding that an enhanced sentence would be in the public interest . . . . Our Supreme Court in *State* v. *Bell*, supra, 283 Conn. 812, contemplated cases in which the defendant would plead guilty to being a persistent offender under § 53a-40. The court stated: 'Of course, in those cases in which the defendant chooses to waive his right to a jury trial under § 53a-40, the court may continue to make the requisite finding. Additionally, the court properly may impose an enhanced sentence if the defendant admits to the fact that extended incarceration is in the public interest.' " *State* v. *Kokkinakos*, supra, 86–87. After reviewing the court's canvass of the defendant's guilty plea, which pertained to the defendant's waiver of a jury trial as to § 53a-40, we found the canvass inadequate because, although he admitted that he did not want a jury trial on the enhancement issue, he never expressly admitted that an enhancement of his sentence would best serve the public interest. Id., 85–87. We then concluded, "Under our case law . . . there are two ways in which the public interest factor can be satisfied in the context of a guilty plea. The court can make an express finding, or the defendant can expressly agree to the determination."[11] Id., 87. Accordingly, we found that the court erred in denying the defendant's motion to correct an illegal sentence. Id., 87–88.

In the present case, the defendant claims that the trial court improperly dismissed his motion to correct an illegal sentence for lack of subject matter jurisdiction. The state concedes that the court improperly concluded that it lacked jurisdiction. On the basis of this court's decisions in *State* v. *Henderson*, supra, 130 Conn. App. 435, *State* v. *Vivo*, supra, 147 Conn. App. 414, and *State* v. *Kokkinakos*, supra, 143 Conn. App. 76, we agree with the defendant that the trial court had jurisdiction pursuant to Practice Book § 43-22 to consider the sentencing court's decision to impose a sentence enhancement, under § 53-202k, without first obtaining the necessary jury finding. We further conclude that this jurisdiction encompasses a claim that the defendant did not properly waive his right to a jury determination of the violation, resulting in a sentence imposed in an illegal manner that exceeds the statutory limit for the underlying crimes of which he was found guilty by the jury. See *State* v. *Henderson*, supra, 443. Accordingly, the defendant's claim that the sentencing court's imposition of the five year enhancement under § 53-202k was illegal absent the requisite jury findings was cognizable by the court, and the court improperly dismissed the motion to correct an illegal sentence for

lack of subject matter jurisdiction.

## II

Having concluded that the trial court improperly dismissed the defendant's motion, we now consider the proper remedy. The defendant seeks reversal of the court's decision and a remand for a new hearing on his motion. The state requests that we consider the merits of the defendant's motion without the necessity of a remand for a new hearing by either adopting, as an alternate ground for affirmance, the trial court's finding that the parties had conceded the elements of the enhancement statute at the end of the criminal trial, or by conducting the harmless error analysis employed in *State* v. *Velasco*, supra, 253 Conn. 230. We conclude that the defendant's suggested remedy is more appropriate under the circumstances of this case.

After concluding that it lacked subject matter jurisdiction, the court nonetheless opined on the merits of the defendant's motion and rejected his claim of entitlement to a jury finding under § 53-202k. The court stated: "[T]he parties at trial conceded the elements of the enhancement statute and agreed that the issue need not be submitted to the jury under the circumstances." Because jurisdiction implicates a court's ability to act, the court should have considered the merits of the defendant's claim only if its preliminary determination—as to whether the claim fell within one of the four common-law categories that permit a trial court to modify a criminal judgment after the sentence has been executed—was resolved in favor of an exercise of its jurisdiction. See *State* v. *Koslik*, supra, 116 Conn. App. 699. Once the court found that it lacked subject matter jurisdiction, any ruling on the merits of the defendant's motion was improper. See id.

We note that the state did not comply with Practice Book § 63-4 (a) (1).[12] If the record, however, was adequate for review of the court's ruling, or if our determination as to the propriety of this ruling was solely dependent on our resolution of an issue of law, we could, in the interest of judicial economy, consider the ruling at a party's request or sua sponte after determining that our review would not prejudice the defendant and the appellee was entitled as a matter of law to a ruling in its favor. See *State* v. *Henderson*, supra, 312 Conn. 596; *State* v. *Martin M.*, 143 Conn. App. 140, 151–52, 70 A.3d 135, cert. denied, 309 Conn. 919, 70 A.3d 41 (2013). For the following reasons, we are unable to resolve the defendant's motion on its merits because it raises the issue of whether the defendant properly waived his right to have the jury determine whether the state had proven beyond a reasonable doubt the elements necessary for sentence enhancement pursuant to § 53-202k, and we do not have an adequate record on which to evaluate this issue.

On appeal, the state argues that under the harmless error analysis employed in *State* v. *Velasco*, supra, 253 Conn. 230–31, there is no question that a rational jury would have found that the state had proven the enhancement elements beyond a reasonable doubt if the requisite factual findings relied on by the state in this case, a class B felony conviction and use of a firearm, had been submitted to the jury for determination. In *Velasco*, our Supreme Court determined that the trial court's failure to allow the jury to make the factual determinations pursuant to § 53-202k is subject to harmless error analysis. Id., 230. The court set forth the standard by which harmless error in omitted jury instructions should be measured: "A jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was *uncontested and supported by overwhelming evidence*, such that the jury verdict would have been the same absent the error. . . . *Neder* v. *United States*, 527 U.S. 1, 17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)." (Emphasis in original; internal quotation marks omitted.) *State* v. *Velasco*, supra, 232–33. In *Velasco*, the court concluded that the evidence that the defendant utilized a firearm during the commission of the felony was neither overwhelming nor uncontested. Id., 234. Accordingly, the trial court's error was determined to be harmful and our Supreme Court vacated the enhanced penalty under § 53a-40.[13] Id., 249.

Subsequently, in *State* v. *Montgomery*, 254 Conn. 694, 735, 759 A.2d 995 (2000), the court also found that a jury, under § 53-202k, is required to make the determination of whether a defendant used a firearm in the commission of a class A, B or C felony and that the failure by the court to submit the issue to the jury was subject to a harmless error determination. "[A] jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error . . . ." (Emphasis omitted; internal quotation marks omitted.) Id., 738. Because the defendant in *Montgomery* did not contest the fact that the victim's fatal wounds were inflicted by a firearm, and because the jury found beyond a reasonable doubt that the defendant was guilty of the victim's murder, a class A felony, the court found that the trial court's failure to instruct the jury regarding the elements of § 53-202k was harmless error. Id.

Accordingly, the omission of an essential element in a jury instruction is considered a nonstructural error and, thus, may be reviewed under a harmless error analysis. See *Neder* v. *United States*, supra, 527 U.S. 1, 8–15; *State* v. *Velasco*, supra, 253 Conn. 232; *State* v.

*Beall*, 61 Conn. App. 430, 435 n.6, 769 A.2d 708, cert. denied, 255 Conn. 954, 772 A.2d 152 (2001). A review of Connecticut appellate cases in which harmless error analysis has been performed by the reviewing court as a result of a trial court's failure to submit the sentence enhancement elements to the jury reveals that the question has been presented as the trial court's failure to instruct the jury properly,[14] and not the trial court's failure to canvass a defendant properly on a waiver of the right to have the jury decide the enhancement factors. Here, by contrast, the defendant claims that the court relied on defense counsel's statement that the matter need not go to the jury and entered a finding of guilty on the enhancement violation without ever speaking to the defendant personally and obtaining an affirmative waiver of his right to a jury trial.[15]

Our Supreme Court has recognized that in pleading guilty to a charge of being a persistent offender, the accused "waives several constitutional rights," including the right to a jury determination of ultimate facts that trigger the enhanced sentence. *State* v. *Wright*, 207 Conn. 276, 287, 542 A.2d 299 (1988). "[I]n criminal matters involving defendants . . . subject to an enhanced sentence . . . a trial judge may properly determine the defendant's prior conviction status only after a knowing and voluntary waiver of the right to a jury trial by the defendant." (Citation omitted.) *State* v. *Velasco*, supra, 253 Conn. 223–24; see also *State* v. *Michael A.*, 297 Conn. 808, 819–21, 1 A.3d 46 (2010) (defendant who pleads guilty to sentence enhancement under persistent felony offender statute, § 53a-40, necessarily waives right to have jury make requisite factual findings thereunder); *State* v. *Groomes*, 232 Conn. 455, 475–76, 656 A.2d 646 (1995) (judge determines prior conviction under persistent felony offender law only after defendant knowingly and voluntarily waives right to jury trial); *State* v. *Moore*, 141 Conn. App. 814, 823, 64 A.3d 787 (when defendant voluntarily pleads guilty to sentence enhancement provision, defendant waives any right to jury trial thereon), cert. denied, 309 Conn. 908, 68 A.3d 663 (2013); *State* v. *Reynolds*, 126 Conn. App. 291, 294, 11 A.3d 198 (2011) (defendant's guilty plea on persistent serious felony offender charge set forth in part B of information necessarily and validly waived right to jury determination as to guilt under part B information); *State* v. *Smalls*, 78 Conn. App. 535, 536 n.1, 827 A.2d 784 (defendant waived right to required jury trial under § 53-202k), cert. denied, 266 Conn. 931, 837 A.2d 806 (2003).

The procedure employed by the trial court in the present case, which removed the sentence enhancement determination from the jury, does not fall into the category of instructional error, but rather into the category of whether the defendant's right to a jury trial was waived properly. If the trial court that found the defendant guilty of the § 53-202k violation relied solely

on defense counsel's concession that the enhancement elements of § 53-202k were proven beyond a reasonable doubt and entered a guilty finding without taking a plea from the defendant and properly canvassing him, then a harmless error analysis would be inappropriate. A claim that a waiver of a jury trial is invalid, unlike a claim of an omitted or erroneous jury instruction, is a claim of structural error that is per se prejudicial and is not subject to harmless error analysis. *State* v. *Gore*, 288 Conn. 770, 790 n.20, 955 A.2d 1 (2008); see *State* v. *Lopez*, 271 Conn. 724, 739, 859 A.2d 898 (2004).

In *State* v. *Gore*, supra, 288 Conn. 770, our Supreme Court, employing its supervisory authority, adopted a rule that "in the future, when a defendant, personally or through counsel, indicates that he wishes to waive a jury trial in favor of a court trial in the absence of a signed written waiver by the defendant, the trial court should engage in a brief canvass of the defendant in order to ascertain that his or her personal waiver of the fundamental right to a jury trial is made knowingly, intelligently and voluntarily. . . . This canvass need not be overly detailed or extensive, but it should be sufficient to allow the trial court to obtain assurance that the defendant: (1) understand that he or she personally has the right to a jury trial; (2) understands that he or she possesses the authority to give up or waive the right to a jury trial; and (3) voluntarily has chosen to waive the right to a jury trial and to elect a court trial." (Footnotes omitted.) Id., 787–89.

Our task, in reviewing a waiver of the right to a jury trial on appeal, is to "determine whether the totality of the record furnishes sufficient assurance of a constitutionally valid waiver of the right to a jury trial. . . . Our inquiry is dependent upon the particular facts and circumstances surrounding [each] case, including the background, experience, and conduct of the accused. . . . In examining the record, moreover, we will indulge every reasonable presumption against waiver of fundamental constitutional rights and . . . [will] not presume acquiescence in the loss of fundamental rights. . . . In addition, a waiver of a fundamental constitutional right is not to be presumed from a silent record." (Citations omitted; internal quotation marks omitted.) Id., 776–77. The defendant must give some affirmative indication of the waiver on the record. Counsel may not make that decision as a matter of trial strategy, and a defendant's passive silence in the case while defense counsel waives the defendant's right to a jury trial is not sufficient to demonstrate a knowing, intelligent and voluntary waiver. Id., 777–78. "A defendant's personal assertion of a waiver of the right to a jury trial is not conclusive evidence that the waiver was made knowingly, intelligently and voluntarily, but its absence is a fatal blow to the validity of a waiver." Id., 782. "If this condition precedent had been satisfied, namely, if there had been an affirmative indication of a jury trial waiver

on the record from the defendant personally, we would conduct a totality of the circumstances analysis to determine whether the defendant's personal waiver of a jury trial was made knowingly, intelligently and voluntarily." Id., 782 n.12.

Although this court, on appeal, has the power, at any time, to correct a sentence that is illegal,[16] we may decline to do so when the record is not adequate for review. "When presented with an inadequate record, we are precluded from reviewing the claim on appeal. . . . It is not an appropriate function of this court, when presented with an inadequate record, to speculate . . . or to presume error from a silent record." (Citation omitted; internal quotation marks omitted.) *Clelford* v. *Bristol*, 150 Conn. App. 229, 236, 90 A.2d 998 (2014); see also *State* v. *Henderson*, supra, 312 Conn. 595–96 (record adequate for consideration of alternate ground for affirmance of denial of motion to correct illegal sentence).

The following additional facts are relevant to our discussion of the adequacy of the record. The only transcripts provided in the record of this appeal are of the hearing on the motion to correct, the criminal trial sentencing proceeding and a partial transcript of the last day of trial, from the point in time at which the jury returned its verdict of guilty of manslaughter in the first degree with a firearm and criminal possession of a pistol or revolver. In the partial transcript that contains the colloquy between the criminal trial court and defense counsel—which the state claims constitutes a concession, as a matter of law, that a jury finding "would be superfluous," and does not constitute a waiver by the defendant that the elements of the part B enhancement provision had been proven—the court merely referred to a prior discussion on the issue. In addition, the defendant, in his principal brief, in contradictory fashion, claims that the concession by his defense counsel was insufficient to constitute a valid waiver on his part, but also indicates that he is not challenging the "canvassing." The reference by the court to a previous discussion regarding the enhancement statute and the defendant's reference to a canvass *may* be an indication that a waiver of the defendant's right to have the jury determine the elements of § 53-202k occurred at some other point in the criminal trial for which we have no record, but we decline to speculate. As such, we cannot determine, on the basis of the limited record before us, whether the defendant personally waived, in writing or on the record, as required under *State* v. *Gore*, supra, 288 Conn. 788–89, his right to a jury trial under § 53-202k. Under these circumstances, we must remand the case with direction to the trial court to determine whether the imposition of the enhanced sentence was appropriate.

The judgment is reversed and the case is remanded

for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

This statute is a sentence enhancement provision rather than a separate offense. *State* v. *Dash*, 242 Conn. 143, 146, 698 A.2d 297 (1997); see also *State* v. *Davis*, 255 Conn. 782, 792, 772 A.2d 559 (2001).

Although a separate part B information is important to avoid any prejudice in cases in which the state seeks enhancement under a persistent offender statute, because such cases require proof of potentially prejudicial prior convictions (see Practice Book § 36-14; *State* v. *Ferrone*, 96 Conn. 160, 173, 113 A. 452 [1921]), our Supreme Court rejected a similar need for a separate part B information in conjunction with prosecutions under § 53-202k in *State* v. *Velasco*, 253 Conn. 210, 225 n.13, 751 A.2d 800 (2000). In the present case, the state initially filed a single, three count information that included the § 53-202k violation as the third count. Subsequently, the state filed an amended information in two parts, and alleged the § 53-202k violation in a part B information.

[2] General Statutes § 53a-55a provides in relevant part: "(a) A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. . . .

"(b) Manslaughter in the first degree with a firearm is a class B felony . . . ."

General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person . . . ."

[3] In *State* v. *Velasco*, supra, 253 Conn. 218–27, our Supreme Court determined that although § 53-202k constitutes a sentence enhancement provision, and not an independent criminal offense, the predicate facts for imposition of an enhanced sentence must nevertheless be found by a jury before a judge can sentence a defendant to a greater term of years than otherwise applicable by the underlying offense alone. Id., 224. The court also held, however, that if the trial court commits an instructional error and fails to submit the issue to a jury, that error is subject to harmless error analysis. Therefore, if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, no reversal is necessary. Id., 232–33.

[4] On appeal, the defendant raises no issue with respect to the court's granting permission to the special public defender to withdraw as defendant's counsel.

[5] The court's memorandum of decision is misdated 2011, rather than 2012.

[6] The court relied on *State* v. *Koslik*, 116 Conn. App. 693, 698–99, 977 A.2d 275, cert. denied, 293 Conn. 930, 980 A.2d 916 (2009), which sets forth the limited types of claims that can be raised in a motion to correct an illegal sentence over which a trial court has jurisdiction. On July 22, 2013, after the defendant had filed his appeal, he filed a motion for articulation requesting that the court articulate its jurisdictional decision and explain its reliance on *Koslik*. The state objected to this motion, arguing that "[t]he trial court's purpose in citing to *Koslik* was clear—it simply set forth the boilerplate jurisdictional rules surrounding a trial court's ability to act on a Practice Book § 43-22 motion to correct an illegal sentence." On August 2, 2013, the trial court denied the motion for articulation and sustained the state's objection. The defendant did not file a motion for review.

[7] "In *Lawrence*, the defendant's claim presupposed an invalid conviction; therefore, it was outside of the scope of the exceptions to the general rule regarding a court's lack of jurisdiction after a sentence has begun." *State* v. *Koslik*, supra, 116 Conn. App. 699.

[8] The *Henderson* court concluded that the defendant's claim that he was deprived of a jury determination was the proper subject of a motion to

correct an illegal sentence despite the state's claim that the defendant's use of the motion was improper because the defendant was challenging the validity and sufficiency of his plea canvass. *State* v. *Henderson*, supra, 130 Conn. App. 443. The defendant had pleaded guilty under the doctrine of *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), to the part B informations that charged him with being a persistent dangerous felony offender and a persistent serious felony offender. *State* v. *Henderson*, supra, 437–38. The defendant expressly had disavowed any challenge to the canvass following his *Alford* plea. Id., 443. His sole claim was that a subsequent change in the law as a result of the decisions in *Apprendi* and *Bell* resulted in an illegal sentence because the court, and not the jury, had determined that an enhancement would best serve the public interest. Id., 443-45. We held that the defendant was not entitled to have the rules in those cases applied retroactively to his case. Id., 448.

[9] Cf. *State* v. *Myers*, 290 Conn. 278, 963 A.2d 11 (2009).

[10] The defendant in *Kokkinakos* claimed that a public interest finding was necessary to enhance his sentence because an amendment enacted by the General Assembly that eliminated the public interest finding from § 53a-40; see Public Acts, Spec. Sess., January, 2008, No. 08-1, § 6; was passed after he had committed the underlying offenses. *State* v. *Kokkinakos*, supra, 143 Conn. App. 81–82.

[11] In *State* v. *Henderson*, supra, 312 Conn. 599 n.13, our Supreme Court partially overruled the holding in *Kokkinakos*, ruling: "To the extent that the Appellate Court's holding in *State* v. *Kokkinakos*, supra, 143 Conn. App. 87, that the trial court must make an 'express finding' means that the trial court must actually consider a defendant's history and character and the nature and circumstances of his criminal conduct before imposing an enhanced sentence, and cannot assume that the defendant agreed to an enhanced sentence by pleading guilty, the state does not challenge that holding in the present case. To the extent that the Appellate Court concluded that the trial court must talismanically recite the relevant statutory language, however, any such holding is hereby overruled. We emphasize, however, that it would be preferable for the trial court to recite the statutory language in order to remove all doubt as to whether it made the finding."

[12] Practice Book § 63-4 (a) (1) provides in relevant part: "If any appellee wishes to . . . (A) present for review alternate grounds upon which the judgment may be affirmed . . . that appellee shall file a preliminary statement of issues within twenty days from the filing of the appellant's preliminary statement of issues . . . ."

The alternate grounds the state raised are contained in a preliminary statement of issues that appears to be generic in nature, intended to be broadly applicable to all types of criminal appeals, but nowhere do its generalized provisions include an alternate ground for affirmance similar to the grounds raised in the state's brief.

[13] The court in *Velasco*, citing *State* v. *Dash*, 242 Conn. 143, 150 n.8, 698 A.2d 297 (1997), noted that § 53-202k is markedly similar to our persistent felony offender statute, § 53a-40, as both statutes specifically constitute sentence enhancement provisions, the application of which turns on the existence of a predicate fact that does not itself reflect an element of the underlying offense. *State* v. *Velasco*, supra, 253 Conn. 225. Therefore, the procedural safeguards with respect to the identity of the fact finder under § 53-202k are analogous in scope to those that apply to factual determinations made pursuant to § 53a-40. Id.

[14] See *State* v. *Davis*, 255 Conn. 782, 795–96, 772 A.2d 559 (2001) (absence of § 53-202k instruction harmless beyond reasonable doubt where defendant's first degree robbery and burglary conviction, class B felonies, necessarily encompassed jury findings that defendant committed class B felonies and that defendant or another participant in crime was armed with deadly weapon, and evidence was uncontested and overwhelming that defendant or another participant used firearm); *State* v. *Nieves*, 89 Conn. App. 410, 421–25, 873 A.2d 1066 (absence of § 53-202k instruction harmless beyond reasonable doubt where defendant's robbery conviction encompassed jury finding that defendant or accomplice used or threatened use of firearm), cert. denied, 275 Conn. 906, 882 A.2d 679 (2005); *State* v. *Rivera*, 74 Conn. App. 129, 152–55, 810 A.2d 824 (2002) (trial court committed harmless error by failing to submit to jury question of sentence enhancement because it was clear beyond reasonable doubt that defendant's conviction of assault in first degree, class B felony, necessarily included finding that defendant had used firearm); *State* v. *Roman*, 67 Conn. App. 194, 207–11, 786 A.2d 1147 (2001) (absence of § 53-202k instruction harmless beyond reasonable

doubt when jury, by finding defendant guilty of class A and class B felonies under information expressly alleging that defendant committed crimes with use of firearm, necessarily found elements of enhancement statute proven, and evidence of use of firearm uncontroverted and overwhelming), rev'd in part on other grounds, 262 Conn. 718, 817 A.2d 100 (2003); *State* v. *Cooper*, 65 Conn. App. 551, 575–77, 783 A.2d 100 (absence of § 53-202k instruction harmless beyond reasonable doubt where defendant's robbery conviction encompassed jury finding that defendant displayed or represented that he possessed firearm, and evidence defendant used firearm overwhelming and uncontroverted), cert. denied, 258 Conn. 940, 786 A.2d 427 (2001); *State* v. *Beall*, supra, 61 Conn. App. 434–36 (failure to instruct jury under § 53-202k harmless error because evidence uncontroverted and overwhelming that defendant committed assault in first degree, class B felony, with firearm).

[15] Practice Book § 42-2 provides: "When an information is divided into two parts under [Practice Book §] 36-14, on a finding of guilty on the first part of the information, a plea shall be taken and, if necessary, election made on the second part and the trial thereon proceeded with. If the defendant elects a jury trial on the second part of the information, such trial may be had to the same or to another jury as the judicial authority may direct."

[16] See, e.g., *State* v. *Daniels*, 207 Conn. 374, 387, 542 A.2d 306, after remand for articulation, 209 Conn. 225, 550 A.2d 885 (1988), cert. denied, 489 U.S. 1069, 109 S. Ct. 1239, 103 L. Ed. 2d 817 (1989); *State* v. *Koslik*, supra, 116 Conn. App. 697–98; *State* v. *Mungroo*, 104 Conn. App. 668, 684, 935 A.2d 229 (2007), cert. denied, 285 Conn. 908, 942 A.2d 415 (2008).

————————————————